UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MICHAEL A. KOWALCZUK,

      Plaintiff,

  v.

SERGEANT ERIC GIESE and
VILLAGE OF MOUNT PLEASANT,

      Defendants.

Case No. 2:19-cv-1230

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Michael Kowalczuk asserts claims arising out of an operating while under the influence traffic stop in which he kicked a police officer multiple times. Kowalczuk claims Defendant Officer Eric Giese used unconstitutional excessive force during the stop, that Defendant Village of Mt. Pleasant failed to properly train and supervise Officer Giese, and that Officer Giese acted wantonly and willfully, entitling Kowalczuk to punitive damages. Kowalczuk's claims are without legal or factual basis to proceed and should be dismissed with prejudice.

First, to the extent Kowalczuk's excessive force claim is based on Officer Giese's actions prior to his deployment of the Taser, the claim is barred by *Heck v. Humphrey*. As a result of this incident, Kowalczuk pled no contest and was found guilty of criminal charges for resisting or obstructing an officer and battery to a law enforcement officer. As this Court explained in its decision on Defendants' Motion to Dismiss, Kowalczuk's claim of excessive force is likely barred by *Heck v. Humphrey* at least up to the point where Officer Giese first deployed the Taser. Kowalczuk's claim of excessive force for Officer Giese's actions are inconsistent with

Kowalczuk's convictions for resisting or obstructing an officer and battery to a law enforcement officer. Accordingly, any portion of Kowalczuk's excessive force claim based on actions prior to the use of the Taser should be dismissed with prejudice.

Second, Officer Giese's actions in twice using a Taser were objectively reasonable. Officer Giese only employed the Taser after Kowalczuk had assaulted him, repeatedly disobeyed Officer Giese's orders to remain on the ground, and after Kowalczuk's father acted in a threatening manner toward the outnumbered officer. Under these circumstances, Officer Giese's decision to employ a Taser to gain control over the suspect and the scene was objectively reasonable. Kowalczuk's claim of excessive force based on Officer Giese's use of a Taser should be dismissed.

Third, Officer Giese is protected from liability for his split second decision to use a Taser by qualified immunity. Both of Officer Giese's Taser deployments occurred under circumstances where an aggressive and assaultive subject continued to ignore Officer Giese's verbal commands and where the officer faced additional hostile actors mere steps away. The Seventh Circuit Court of Appeals has upheld the dismissal of excessive force claims based on qualified immunity under similar circumstances, and Officer Giese should be afforded similar legal protections.

Fourth, Kowalczuk's claim under *Monell* for insufficient training and/or supervision is without any factual basis and should be dismissed. At the time of the incident, Officer Giese had met all of the training requirements for the Mt. Pleasant Police Department and was supervised according to police policies and in the same manner as all other patrol officers. Kowalczuk has identified no aspect of Officer Giese's training or supervision which was inconsistent with prevailing standards.

Finally, Kowalczuk's punitive damages claim, alleged upon information and belief, lacks any supportive evidence that Officer Giese acted wantonly and willfully or was motivated by ill

will or a desire to injure Kowalczuk. It should be dismissed in the same manner as Kowalczuk's excessive force claim.

This memorandum will address each argument in turn below.

## FACTUAL BACKGROUND

In 2013, Eric Giese was a law enforcement officer for the Village of Mt. Pleasant in Racine County. (Defendants' Statement of Proposed Material Facts ("SOPMF"), 48-49.) He had been a law enforcement officer for six years and had completed all requisite officer training, including training on the use of Tasers. (*Id.*, 46, 48-49.)

In the late evening hours of September 3, 2013, Michael Kowalczuk was driving his 2007 Mercury Sable. (*Id.*, 1.) He was returning to his house in Mt. Pleasant, Wisconsin, from a bonfire at a high school friend's family's farm in Oak Creek. (*Id.*, 1.) He testified that he had consumed a couple of beers at the bonfire. (*Id.,* 2.)

On that same evening, Officer Giese was on patrol in the Village of Mt. Pleasant when he observed a vehicle make a wide eastbound turn onto 16th Street and then accelerate as it drove past his squad car. (*Id.*, 3.) Officer Giese followed the vehicle and observed that it was speeding. (*Id.*, 4, 5.) He activated his lights. (*Id.*, 5.)

Officer Giese followed the vehicle for about 2/10 of a mile with just his lights on. (*Id.*, 6.) As the two vehicles approached Green Bay Road, the suspect vehicle's driver activated the car's turn signal to make a right turn at a red light. (*Id.*, 7.) The vehicle did not come to a complete stop at the stop light and turned right onto Green Bay Road. (*Id.*, 8.) At this point, Officer Giese activated his sirens. (*Id.*, 9.) He verified the registration of the vehicle and determined it was registered to an address on Sunset Boulevard. (*Id.*, 10.) Based on Officer Giese's training and experience, he knew that intoxicated drivers often try to make it home before stopping. (*Id.*, 11.)

3

The vehicle pulled over on Sunset Boulevard in front of the street address to which the car was registered. (*Id*., 1, 12.) Based on his training and experience, Officer Giese knew that intoxicated drivers often try to flee and run into their homes before being apprehended. (*Id*., 11.)

When Kowalczuk opened the driver's side door, Officer Giese ordered the driver to get back in the vehicle and show his hands. (*Id*., 13.) The suspect, later identified as Michael Kowalczuk, complied and showed his hands. (*Id*., 14.) At this point, Officer Giese ordered him to get out of the vehicle and onto the ground. (*Id.*, 15.) Kowalczuk did not comply with the orders to get on the ground and Officer Giese physically directed Kowalczuk to the ground. (*Id*., 16, 17.) While on the ground, Officer Giese told Kowalczuk to get on his stomach and put his hands behind his back. (*Id*., 18.) Kowalczuk was flailing on the ground and not complying with Officer Giese's commands. (*Id.,* 19.)

Officer Giese told Kowalczuk that he needed to place his hands behind his back and get on his stomach, or he would be tased. (*Id*., 20.) Kowalczuk complied with this command, but Officer Giese was interrupted by Kowalczuk's approaching family members. (*Id.*, 21, 22.)

As Kowalczuk's family members approached, Officer Giese stood up and ordered that they stay back and for Kowalczuk to stay on the ground. (*Id.,* 22, 23.) Kowalczuk did not comply with the order to remain on the ground and began to get up, so Officer Giese directed him back down to the ground. (*Id*., 24, 25.) Kowalczuk struggled against Officer Giese and Officer Giese struck Kowalczuk once in the face. (*Id.*, 26, 27.) Kowalczuk was on his back and kicked Officer Giese in the abdomen. (*Id*., 28.) He then kicked Officer Giese a second time in the genitalia. (*Id.*) As the two scuffled, Kowalczuk's father starting walking towards the two struggling men with a clenched fist. (*Id.*, 29, 51.) Kowalczuk's father only retreated after Kowalczuk kicked Officer Giese off of him and Officer Giese stood up. (*Id.,* 30.)

4

As Kowalczuk's father and brother stood a few feet away, Officer Giese continued to order Kowalczuk to stay on the ground. (*Id.,* 31.) However, again defying orders, Kowalczuk got up, took a few steps in Officer Giese's direction and then turned and walked away towards his family. (*Id.*) At this point Officer Giese deployed his Taser into Kowalczuk's back. (*Id.*, 32.) A suspect's back is the preferred location for a Taser deployment as it minimizes the risk of unintended injury from the Taser leads. (*Id.,* 33, 34.) The Taser deployment caused Kowalczuk to land on the pavement. (*Id.*, 32.)

After a few seconds, Kowalczuk began to get up again in spite of Officer Giese's repeated commands to remain on the ground. (*Id.*, 35.) With Kowalczuk's father and brother standing a few feet away yelling at Officer Giese, Kowalczuk started to stand up while facing Officer Giese. (*Id.*) The officer deployed another Taser cycle causing Kowalczuk to return to the ground. (*Id.*, 36.) Kowalczuk then raised himself to a seated position but finally remained on the ground. (*Id.*, 37.)

Kowalczuk was charged with battery of a peace officer, resisting an officer, misdemeanor bail jumping, and failure to obey a traffic signal. (Statement of Stipulated Facts ("SOSF"), 5.) A judgment of conviction for battery of a peace officer, resisting or obstructing an officer, and bail jumping was entered on January 14, 2015. (*Id.*, 7.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore,* 351 F.3d 278, 282 (7th Cir. 2003). "[I]n the light most favorable . . .

simply means that summary judgment is not appropriate if the court must make a choice of inferences." *Harley–Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003). The evidence must create more than "some metaphysical doubt as to the material facts." *Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

## ARGUMENT

### I. PLAINTIFF'S EXCESSIVE FORCE CLAIM IS BARRED BY *HECK v. HUMPHREY* WITH RESPECT TO ANY ACTIONS OCCURRING PRIOR TO OFFICER GIESE'S USE OF A TASER.

The arguments regarding the effect of *Heck* upon Plaintiff's claims were extensively briefed in the context of Defendants' Motion to Dismiss. Defendants renew their arguments in this Motion for Summary Judgment. Many of Plaintiff's arguments related to his excessive force claim are contrary to his admissions in the criminal case arising out of this incident, and therefore under *Heck* Plaintiff is barred from proceeding with the excessive force claim.

A person convicted of a criminal offense cannot raise a civil claim under 42 U.S.C. § 1983 "which, if true, would have established the invalidity of his outstanding conviction." *Wallace v. Kato*, 549 U.S. 384, 392, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007), *interpreting Heck.* A plaintiff "can only proceed to the extent the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014), *interpreting Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010). In *Jones*, United States District Court for the Eastern District of Wisconsin explained, "a conviction for resisting or obstructing an officer under Wisconsin law necessarily means that the jury concluded that the police officers' actions at the time were constitutional (which means that the officers were not using excessive force at the time)." *Jones v. Phillips*, 2017 WL 1292376, *5 (E.D. Wis. 2017).

6

In its decision on Defendants' Motion to Dismiss, the Court found that a portion of Plaintiff's claim of excessive force may be barred by *Heck*. The Court explained that the initial sequence of events in which Kowalczuk refused to get on the ground and had to be physically directed to the ground multiple times by Officer Giese was addressed in the criminal complaint, and therefore would likely be barred by *Heck*. (Order on Motion to Dismiss, 7 [Dkt 16].) This sequence of events included Kowalczuk's kicking of Officer Giese, which could provide the facts to support the criminal charges for battery to a law enforcement officer and resisting and obstructing an officer. (*Id.*) The Court found, however, that the excessive force claim could be supported by the two Taser deployments without undermining Kowalczuk's criminal convictions. (*Id.,* 9.)

To the extent Kowalczuk's excessive force claim is premised upon pre-Taser actions of Officer Giese, the claim is diametrically at odds with his convictions for battery to a law enforcement officer and resisting or obstructing a law enforcement officer. The criminal complaint, which formed the basis for Kowalczuk's ultimate plea and conviction, alleged that Kowalczuk exited his car on his own and refused to comply with Officer Giese's command to get down on the ground. (Order on Motion to Dismiss, 5 n.1 [Dkt 16]) (Court took judicial notice of court records from criminal case). Officer Giese directed Kowalczuk to the ground. (*Id.*) Kowalczuk started to get up when he saw his family members in spite of Officer Giese continuing to order him to remain on the ground. (*Id.*) After Officer Giese directed Kowalczuk to the ground a second time, Kowalczuk kicked Officer Giese first in the abdomen and a second time in the groin. (*Id.*)

To establish that Officer Giese's use of force was excessive, Plaintiff must prove that Officer Giese's actions were not reasonable. However, in order to make this factual proof,

7

Kowalczuk must deny his own actions that resulted in Officer Giese using force. Kowalczuk could not make a case for excessive force while also conceding that prior to the use of the Taser he repeatedly disobeyed Officer Giese's commands to remain on the ground and kicked the officer in the abdomen and the genitals. Kowalczuk's claim, if successful, would necessarily imply the invalidity of his actions that led to the criminal charges that were filed against him and of which he was convicted. Any such claim would also repudiate his criminal conviction for resisting and obstructing an officer. Such arguments are barred by *Heck. See Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017) (in *Okoro* "we held that defendant Okoro's effort to complain about a search was just a disguised way of asserting his innocence.") Accordingly, any excessive force claim based on pre-Taser actions by Officer Giese must be dismissed.

## II. PLAINTIFF'S EXCESSIVE FORCE CLAIM SHOULD BE DISMISSED BECAUSE OFFICER GIESE'S ACTIONS WERE OBJECTIVELY REASONABLE

Plaintiff's excessive force claim against Officer Giese is governed by the reasonableness standard of the Fourth Amendment to the United States Constitution. Reasonableness is analyzed by the totality of the circumstances from the viewpoint of what a reasonable law enforcement officer would do under the circumstances, taking into consideration that officers are often required to make split second decisions in tense circumstances. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018). Whether an officer's use of force was objectively reasonable is a legal determination. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012). Courts have generally held that an officer's use of a Taser against an actively resisting suspect is either constitutionally reasonable or not against clearly established law. *Abbott v. Sangamon County*, 705 F.3d 706, 727-28 (7th Cir. 2013) (listing exemplar cases from Seventh Circuit and other circuit courts of appeal).

The following factors are weighed to determine whether an officer acted reasonably: (1) the nature and extent of force used against the severity of the crime, (2) the nature and immediacy of the threat posed by the suspect to the officer, and (3) the extent to which the suspect actively resisted or attempted to resist arrest. *Graham*, 490 U.S. 386, 396. When Officer Giese's use of a Taser is analyzed under these three factors, it is clear Officer Giese's actions were objectively reasonable and the excessive force claim alleged against him should be dismissed with prejudice.

In reviewing the evidence, it is important to note that video evidence cannot be refuted by contradictory evidence. *See Rivera v. Lindmeier*, 560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate)*; Martin v. Wentz*, 794 Fed. Appx. 548, 549 (7th Cir. 2020) ("Here, the undisputed facts – those that were either admitted to by the parties or confirmed by video evidence…"). The Seventh Circuit commented that to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events." *Dockery*, 911 F.3d at 461. Defendants have submitted the recorded video from Officer Giese's squad car in support of their motion for summary judgment. (Declaration of Andrew Yust, 3, Ex. A.)

A. Nature and Extent of Force Employed.

Officer Giese's use of a Taser while attempting to obtain compliance from Kowalczuk was proportionate to the presented circumstances. Officer Giese did not employ the Taser until after Kowalczuk had kicked Officer Giese multiple times and repeatedly refused to comply with his commands to stay and remain on the ground. (SOPMF, 28, 31, 32.) It was only after Kowalczuk kicked Officer Giese off of him, got up, took a few steps in the officer's direction, and then turned to walk away that Officer Giese deployed the Taser. (*Id.*) At this point Kowalczuk had already assaulted the officer and continued to ignore Officer Giese's repeated commands to remain on the ground. (*Id.*, 28, 31.) His use of a Taser under these circumstances was objectively reasonable.

9

B. <u>Nature and Immediacy of the Threat Posed by the Suspect</u>.

Officer Giese acted in a reasonable manner in using a Taser upon Kowalczuk because Kowalczuk and his father posed an immediate physical threat to the officer's authority. Immediately prior to Officer Giese deploying the Taser, Kowalczuk had kicked Officer Giese twice. (*Id.*, 28.) Kowalczuk's father had also started walking around the side of the car in the direction of Kowalczuk and Officer Giese with his fists clenched. (*Id.*, 29, 30.) Officer Giese faced a combative, non-compliant suspect trying to get away and while Officer Giese was outnumbered by Kowalczuk, Kowalczuk's father, and Kowalczuk's brother. (*Id.*, 22, 29.) These circumstances posed a danger and immediate threat to Officer Giese's safety and his ability to control the suspected drunk driver and the scene.

C. <u>Extent to which Suspect Actively Resisted or Attempted to Actively Resist</u>.

There is no question Kowalczuk actively resisted Officer Giese's repeated instructions to get on the ground and stay on the ground. In fact, Kowalczuk admitted during his deposition that he repeatedly failed to obey the officer's directions. *(Id*., 54.) Kowalczuk only lowered himself to the ground when physically directed by Officer Giese. (*Id.*, 16, 17, 23, 25.) This occurred on two occasions. (*Id.*) During both instances, Kowalczuk refused to stay on the ground and stood up and attempted to walk away. (*Id.*, 24, 31.) He further actively resisted Officer Giese by wrestling with him when Officer Giese physically directed him to the ground a second time and then kicking Officer Giese. (*Id.*, 26, 28.)

In summary, Officer Giese only employed the Taser after Kowalczuk repeatedly refused verbal directives to get on the ground and stay on the ground, wrestled with Officer Giese when he physically directed Kowalczuk to the ground, kicked Officer Giese twice, and repeatedly started to walk away from the scene. Moreover, the Taser was only used after it appeared that Officer Giese was outnumbered two to one when he was threatened by Kowalczuk's father rounding the

10

car to intervene. Under these circumstances, it was objectively reasonable for Officer Giese to use a Taser to obtain control over the suspect without further risk to his own safety.

### III. PLAINTIFF'S EXCESSIVE FORCE CLAIM SHOULD BE DISMISSED BECAUSE OFFICER GIESE'S ACTIONS WERE PROTECTED BY QUALIFIED IMMUNITY.

Regardless of whether a law enforcement officer's actions were objectively reasonable, an officer is entitled to qualified immunity as a public official. *Dockery*, 911 F.3d at 466 (7th Cir. 2018) ("A public official is entitled to qualified immunity from suit unless he violated a clearly established constitutional right.") Qualified immunity affords "enhanced deference" to an officer's on-scene judgments about the level of force employed in a given situation. *Abbot v. Sangamon County*, 705 F.3d 706, 725 (7th Cir. 2013). An officer's entitlement to qualified immunity is analyzed under a two-pronged approach: "(1) whether the facts alleged or shown by the plaintiff establish a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Dockery*, 911 F.3d at 466.

The United States Supreme Court explained an officer cannot violate a clearly established right unless the right's contours were sufficiently definite and any reasonable official in his shoes would have understood that he was violating it. *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015). In other words, existing legal precedent must place the statutory or constitutional question beyond debate. *Id.* This standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Id.* To remove the protective shield of qualified immunity, a plaintiff must demonstrate the conduct in question is analogous to prior cases where an officer's conduct was held to be unconstitutional or the conduct is so "egregious and unreasonable" that "no reasonable officer could have thought he was acting lawfully." *Dockery,* 911 F.3d at 466-67; *Burnsley v. Village of Brown Deer*, WL 620014, * 7 (E.D. Dist. Wis. Feb. 10, 2020).

11

Analogous cases from the Seventh Circuit demonstrate Officer Giese was acting in a manner consistent with other officers who used Tasers and were declared immune from excessive force claims by qualified immunity. The Seventh Circuit has determined that an officer's actions in deploying a Taser are constitutionally reasonable and not in violation of a clearly established right where a suspect actively resists the officer. *Abbott*, 705 F.3d at 723-24; *see Clarett v. Roberts*, 657 F.3d 664, 674-75 (7th Cir. 2011) (kicking and flailing); *Forrest v. Prine*, 620 F.3d 739, 745-46 (7th Cir. 2010) (angrily refusing to follow instructions).

When analyzing multiple Taser deployments, the Seventh Circuit has analyzed each deployment separately to determine if the officer acted on each occasion within the scope of what is permitted by the Constitution. For example, in *Dockery*, a suspect became agitated during the booking process in the police station. *Dockery v. Blackburn*, 911 F.3d 458 (7th Cir. 2018). After the suspect struggled with an officer and fell to the ground, he kicked in the direction of the officer and jumped to his feet. 911 F.3d at 463. Another officer deployed her Taser, which briefly incapacitated the suspect. *Id.* However, the suspect then kicked at the officer, sat up, pulled out the Taser leads, and ignored the officer's order to stay on the ground. *Id.* The officer then directly applied a Taser three times to the suspect's back to bring him under control so he could be handcuffed. *Id.* The Seventh Circuit found the officers were entitled to qualified immunity for each of the Taser deployments because the suspect continued to resist the officers' authority throughout the encounter. *Id.,* 467-68.

In contrast, the Seventh Circuit has not allowed an officer to invoke qualified immunity where the officer employs a Taser against a "non-resisting or passively resisting" suspect. *Abbott v. Sangamon County*, 705 F.3d 706, 732 (7th Cir. 2013); *see also Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) (no immunity where officers broke ribs of handcuffed person while loading

12

him into squad car). For example, in *Cyrus*, an officer deployed a Taser against a resisting suspect causing the suspect to roll down a driveway. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 859 (7th Cir. 2010). The suspect was then positioned face down with his hands beneath him. *Id.*, 860. The officer thereafter commanded the suspect to place his hands behind his back. *Id.* When there was no response from the suspect, the officer triggered the Taser several additional times. *Id.* The Seventh Circuit found the officer was entitled to qualified immunity for the first use of the Taser because the suspect had actively resisted the officer. *Id.* at 861. However, it determined a question for a jury existed as to whether the subsequent Taser deployments were shielded by qualified immunity because the suspect was lying face down and not actively resisting the officer. *Id.*, 862-63.

In the present case, Officer Giese first employed a Taser after Kowalczuk had kicked him multiple times and got up and started walking away from the officer in spite of verbal directives to stay on the ground. (SOPMF, 24, 28, 31.) Like the suspects in *Dockery* and *Cyrus*, Kowalczuk was physically resisting Officer Giese. He was failing to obey Officer Giese's repeated commands. Officer Giese should be afforded qualified immunity like the officers in *Dockery* and *Cyrus* for his first use of the Taser.

Officer Giese's second deployment of the Taser occurred shortly after the first deployment. Kowalczuk started to get up from the ground again in spite of commands from Officer Giese for Kowalczuk to remain on the ground. (*Id.,* 35.) As Kowalczuk stood up, defying Officer Giese's commands, he took several steps in Officer Giese's direction before turning away. (*Id.*, 35, 36.) Kowalczuk's actions were like those of the suspect in *Dockery* who continued to disobey the officers. The officer in *Dockery* was found to have acted within the scope of qualified immunity, and so too should Officer Giese be entitled to qualified immunity.

13

Kowalczuk's actions were unlike those of the suspects in *Cyrus* and *Abbott*, who remained motionless on the ground. In those instances the officers did not receive qualified immunity for their subsequent Taser use as it was not evident the suspects were continuing to resist. Here, however, Kowalczuk admittedly continued to resist Officer Giese's commands to remain on the ground after having kicked Officer Giese two times and been stunned by a Taser. (SOPMF, 54.) Officer Giese should be found to have acted within the scope of qualified immunity for the second Taser deployment.

Moreover, unlike the officers in *Dockery* who were in the safety of the police station when they used a Taser, Officer Giese was outside the suspect's house. The suspect's father, brother, and mother were standing several feet away in the front yard yelling at the officer. (*Id.* 22.) Kowalczuk's father had already taken a few steps in Officer Giese's direction with a clenched fist before backing off. (*Id.*, 29, 30.) Under these circumstances, Officer Giese had to exercise the kind of split second judgment that is entitled to "enhanced deference" when analyzed in the context of qualified immunity. *Abbott*, 705 F.3d at 725. Accordingly, Officer Giese's second use of the Taser occurred within the scope of his qualified immunity, and the excessive force claim and related punitive damages claim should be dismissed with prejudice.

## IV. PLAINTIFF'S FAILURE TO TRAIN AND SUPERVISE CLAIM IS WITHOUT BASIS AND SHOULD BE DISMISSED.

Plaintiff claims the Village of Mt. Pleasant should be held liable under *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978), for failing to properly train and supervise Officer Giese. This claim should be dismissed as Officer Giese was properly trained and supervised.

The law is established that a municipality may only be held liable in a 42 U.S.C. § 1983 action where the alleged constitutional violation resulted from a municipal policy or custom. *Id.*; *Thrasher v. Gen. Cas. Co. of Wis.*, 732 F. Supp. 966 (W.D. Wis. 1990). To proceed with a claim,

14

a plaintiff must prove that an express policy or custom of the municipality caused a violation of a federal right. *Monell*, 436 U.S. at 690-91, 694, 98 S. Ct. 2018. Specifically, Plaintiff must prove: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Vazquez v. Bensenville*, 22 F. Supp. 3d 861, 872 (N.D. Ill. 2014) (citing *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004)).

In the present case, Plaintiff offers no evidence that the Village of Mt. Pleasant has a written policy or unwritten practice or custom authorizing the use of unlawful excessive force by its law enforcement officers. (SOPMF, 53.) There is also no evidence a person with final policymaking caused Kowalczuk's claimed injury. (*Id.*, 41, 53.) Officer Giese was a patrol officer at the time of the incident, not a person vested with policymaking authority. (*Id.,* 3.) As a result, Plaintiff's claim under *Monell* must be dismissed.

Furthermore, Chief of Police Matthew Soens reviewed Officer Giese's training records, including his training on the use of Tasers. *(Id.,* 46.) Chief Soens confirmed that Officer Giese's training was up to date as of the date of the incident. (*Id.*) In fact, Officer Giese is now a law enforcement instructor on the use of Tasers. (*Id.*, 47.) Sergeant David Viccarro was Officer Giese's supervisor on the date of the incident. (*Id.*, 40.) Sergeant Viccarro confirmed that Officer Giese was supervised according to department polices and in the same manner as any other officer under his supervision. (*Id.*, 41.) Sergeant Vaccaro also reviewed the dashcam footage following the incident and found no fault with Officer Giese's actions or decision to use a Taser. (*Id.*, 42, 43.) In sum, there is no evidence the Village of Mt. Pleasant had in place any express policy or

15

custom that deprives citizens of their rights. The claim against the Village of Mt. Pleasant under *Monell* should be dismissed with prejudice.

## V. PLAINTIFF'S PUNITIVE DAMAGES CLAIM LACKS EVIDENCE OFFICER GIESE ACTED WANTONLY OR WILLFULLY OR WAS MOTIVATED BY ILL WILL OR A DESIRE TO INJURE KOWALCZUK.

Kowalczuk's claim for punitive damages hinges upon his excessive force claim. As explained above, the excessive force claim should be dismissed on its merits for several reasons. However, independent of the arguments against Kowalczuk's excessive force claim, there is no evidence to support punitive damages.

Punitive damages are "appropriate when the defendant acted wantonly and willfully, or was motivated in his actions by ill will or a desire to injure." *Hendrickson v. Cooper*, 589 F.3d 887, 894 (7th Cir. 2009). Here, there is no evidence Officer Giese knew Kowalczuk or harbored any ill will or a desire to injure him. Moreover, Kowalczuk has produced no evidence that Officer Giese actions towards him were willful and were not actions taken in response to Kowalczuk repeatedly refusing to comply with Officer Giese's orders and assaulting Officer Giese. Kowalczuk's claim for punitive damages lacks basis in fact or law and should be dismissed.

## CONCLUSION

For the reasons stated above, Defendants request this Court grant their motion for summary judgment and dismiss Plaintiff's claims alleged against them with prejudice and with costs.

Dated this 1st day of June, 2020.

AXLEY BRYNELSON, LLP

*Electronically signed by Kevin D. Trost*
Lori M. Lubinsky (State Bar No. 1027575)
Kevin D. Trost, State Bar No. 1028231
Attorneys for Defendants
2 East Mifflin Street, Suite 200
Madison, WI 53703

16

Phone: (608) 257-5661  
Fax: (608) 257-5444  
Email: ktrost@axley.com