UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MICHAEL A. KOWALCZUK,

        Plaintiff,

   v.

SERGEANT ERIC GIESE and
VILLAGE OF MOUNT PLEASANT,

        Defendants.

Case No. 2:19-cv-1230

**DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Michael Kowalczuk concedes that the actions of Eric Giese prior to the Taser deployments are barred by *Heck* and not actionable. (Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Response"), 9 n.4 [Dkt 33].) As a result, what remains at issue is whether either of the two Taser deployments constitute unconstitutional excessive force. Kowalczuk argues Giese's actions were not objectively reasonable under the circumstances. He also contends triable facts exist as to whether Giese is entitled to qualified immunity because Kowalczuk was not resisting at the time of the Taser deployments.

Kowalczuk's analysis on these arguments sidesteps the immediate prior history of actions by Kowalczuk and his father which influenced Giese to use a Taser. Immediately before Giese had deployed the Taser, Kowalczuk had wrestled with Giese on the ground and kicked Giese in the abdomen and in the genitals. Kowalczuk's father had also rounded the front of Kowalczuk's vehicle with his fist clenched heading in the direction of Kowalczuk and Giese. Giese had just been assaulted by Kowalczuk and was outnumbered by Kowalczuk and his family. Kowalczuk then stood up and by his own admission started walking away from the scene as Giese repeatedly

screamed at him to stay on the ground. Giese's subsequent use of a Taser was what a reasonable officer would do when faced with the same circumstances or, at the very least, was within the realm of actions for which an officer is entitled to qualified immunity when making a split second decision. Accordingly, the claims brought against Defendants should be dismissed with prejudice.

**ARGUMENT**

**I.  OFFICER GIESE'S USE OF A TASER WAS OBJECTIVELY REASONABLE UNDER THE CIRCUMSTANCES.**

Kowalczuk has agreed that whether an officer's actions were objectively reasonable is a legal determination analyzed by the totality of the circumstances of how a reasonable law enforcement officer would act under the circumstances. (Plaintiff's Response, 9 [Dkt 33].) The parties also agree that this determination is aided by an analysis of three factors set forth by the United States Supreme Court: 1) the nature and extent of force used against the severity of the crime, (2) the nature and immediacy of the threat posed by the suspect to the officer, and (3) the extent to which the suspect actively resisted or attempted to evade arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Analysis of these factors must take into consideration that officers are often required to make split second decisions in tense circumstances. *Id.*, 395.

Kowalczuk's analysis of the three factors impacting a court's decision on objective reasonableness grossly understates and discounts Kowalczuk's ongoing resistance to Giese at and immediately prior to the time Giese deployed his Taser. Defendants will address Kowalczuk's analysis of each factor in turn below.

A.  Severity of the Crime.

Kowalczuk argues that this factor favors no finding of objective reasonableness because Giese stopped Kowalczuk's vehicle for a traffic infraction. (Plaintiff's Response, 10 [Dkt 33].) However, it was not a traffic infraction that resulted in Giese's use of a Taser. From the outset

2

Kowalczuk's driving made Giese suspect that Kowalczuk was not only speeding but was also driving impaired. (Defendants' Statement of Proposed Material Facts ("DSPMF"), 11 [Dkt 26])(Defendants' Response to Plaintiff's Proposed Findings of Fact ("DRPPFF"), 8.) By the time Giese deployed his Taser, Kowalczuk had repeatedly ignored Giese's commands to get on the ground and stay on the ground, physically resisted Giese when Giese attempted to direct Kowalczuk to the ground, and kicked Giese twice. (DSPMF, 16, 19, 26, 30, 35, 54.) These actions which were violent and in defiance of a law enforcement officer resulted in Giese deploying his Taser to gain control over a resistant drunk driver. Accordingly, analysis of this factor favors a determination that Giese was confronting an actively resistive and physically violent suspect and the use of a Taser was an action a reasonable law enforcement officer would employ under the circumstances.

   B. <u>Immediacy of the Threat Posed by the Suspect to the Officer</u>.

Kowalczuk claims he was not a threat to the officer at or prior to either time Giese deployed the Taser. (Plaintiff's Response, 10-12 [Dkt 33].) Regarding the first use of the Taser, Kowalczuk argues he had stopped resisting and did not pose a threat because he was unarmed and handcuffed. (*Id.*, 10.) However, the only reason Kowalczuk was no longer physically resisting Giese at the immediate moment the Taser was deployed was because Kowalczuk had kicked Giese off of him. (DSPMF, 30.) The fact that Kowalczuk had already fought and kicked Giese while handcuffed significantly undermines Kowalczuk's argument that he was harmless and posed no threat to the officer. Furthermore, Kowalczuk's father's rounding the front of the car walking in the direction of Giese and Kowalczuk with a closed fist confirms Giese faced an immediate threat to his safety just prior to the first Taser deployment. (*Id.*, 29.)

3

Concerning the second use of the Taser, Kowalczuk argues that he posed no threat because he was dazed from being unconscious for several seconds after hitting the ground from the first Taser deployment. (Plaintiff's Response, 12 [Dkt 33].) However, the first Taser deployment had no effect upon Kowalczuk deciding to comply with Giese's repeated orders to remain on the ground. In fact, the undisputed evidence is that within seconds after the first Taser deployment Kowalczuk began to get up off the ground again even though Giese was shouting at him to stay down. (DSPMF, 35.) Furthermore, Kowalczuk's father, who had just seconds earlier rounded the corner of the vehicle looking like he was going to join his son's fight, remained a few steps away shouting at Giese and challenging him to a fight. (DRPPFF, 56, 63.) Giese testified that Kowalczuk's family members continued to get closer to Giese and Kowalczuk, prompting Giese to back up. (*Id.*, 28.) Giese had good reason to fear that either Kowalczuk, Kowalczuk's father, or both posed an immediate threat to his safety immediately prior to each of the Taser deployments. A reasonable law enforcement officer may employ a Taser under these circumstances to protect his own safety while attempting to bring a resistive suspect under control.

    C. <u>Extent to which Suspect Actively Resisted or Attempted to Evade Arrest</u>.

Once again, Kowalczuk argues that he was not actively resisting or evading arrest at the time of either of the Taser deployments. (Plaintiff's Response, 12 [Dkt 33].) While Kowalczuk is right that he was no longer physically assaulting Giese at the immediate moment prior to the Taser deployments, he was continuing to actively resist by ignoring Giese's repeated commands to stay on the ground. (DSPMF, 35, 54.) He was also starting to evade arrest by walking away from Giese and the scene. (*Id.*)

It is important to recognize that the Taser deployments did not occur in a vacuum, there was an historical progression of Kowalczuk's actions that led up to Giese's use of the Taser.

4

Kowalczuk resisted Giese by not pulling his vehicle over when Giese turned on his squad car's lights and then his siren. (DRPPFF, 8.) He resisted Giese by struggling with him when Giese directed him to the ground. (DSPMF, 16, 26, 28.) He resisted Giese by repeatedly standing up while Giese ordered him to stay on the ground. (*Id.*, 31, 35, 54.) He resisted Giese by kicking him in the abdomen and genitals. (*Id.*, 26, 28.) It was only after these multiple instances of resistance by Kowalczuk that Giese deployed his Taser when Kowalczuk continued to ignore Giese's orders and got up and started to walk away from the scene. (*Id.*, 24, 31.) Kowalczuk was clearly continuing to actively resist Giese and attempted to evade arrest. A reasonable officer in Giese's position may employ a Taser to gain control over a suspect who had just recently assaulted the officer, continued to disobey lawful orders, and started to evade arrest.

## II. OFFICER GIESE IS ENTITLED TO QUALIFIED IMMUNITY FOR THE TWO TASER DEPLOYMENTS.

Kowalczuk argues Giese should not be afforded the protection of qualified immunity because it is a clear Fourth Amendment violation to utilize a Taser against a suspect who is no longer resisting or fleeing at the time the Taser was deployed. (Plaintiff's Response, 13 [Dkt 33].) Yet, the video evidence demonstrates unequivocally that Kowalczuk was continuing to resist Giese prior to each use of the Taser. (*See* Declaration of Andrew Yust ("Yust Decl."), ¶ 3, Ex. A [Dkt 32])(dashcam video.) Kowalczuk had kicked Giese twice just seconds before the first Taser deployment. (DSPMF, 26, 28.) Kowalczuk continued to ignore Giese's commands to remain on the ground and got up from the ground in the direction of Giese. (*Id.*, 24, 31.) Giese then deployed his Taser when Kowalczuk turned and started to flee towards his family. (*Id.*) These are the actions

5

of someone continuing to resist a law enforcement officer. There is no other reasonable way to view the undisputed events that occurred prior to the Taser deployment.

As for the second Taser deployment, Kowalczuk continued to ignore Giese's orders to stay down.  Even though Kowalczuk had just been subjected to a Taser deployment, he continued to resist and started to stand up. (*Id.*, 35.) Perhaps the best evidence that he was continuing to resist is the contrast between Kowalczuk's actions after the first use of the Taser and the second use of the Taser. Following the first Taser deployment, Kowalczuk started to stand up. (*Id.*) Following the second Taser deployment, Kowalczuk merely raised himself into a seated position on the ground. (*Id.*, 37.)  He did not attempt to get back on his feet. (*Id.*)  His resistance ended and so did Giese's physical efforts to obtain Kowalczuk's compliance with his orders.

An officer is only excepted from the protections of qualified immunity when "he violated a clearly established constitutional right." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018). The Seventh Circuit has held that qualified immunity provides "enhanced deference" to an officer's on-scene judgments about the level of force employed in a given situation. *Abbot v. Sangamon County*, 705 F.3d 706, 725 (7th Cir. 2013). Where a suspect continues to resist an officer, the officer's actions of deploying a Taser (sometimes multiple times) has been held to fall within the scope of qualified immunity. *See Dockery*, 911 F.3d at 467-68 (officers immunized from liability for four Taser deployments where suspect continued to resist); *Forrest v. Prine*, 620 F.3d 739, 745-46 (7th Cir. 2010) (officer immunized from liability where suspect was Tasered after refusing to follow instructions); *Abbott*, 705 F.3d 708, 728 (officer entitled to qualified immunity for use of Taser three times because suspect continued to resist). It is only where a suspect stops resisting that the officer's continued use of the Taser is not immunized. *See Cyrus v. Town of*

6

*Mukwonago*, 624 F.3d 856, 859 (7th Cir. 2010)(first use of Taser subject to qualified immunity; subsequent uses of Taser on prone, unresponsive suspect not immunized).

In the present action, throughout the entire incident up until his response to the second Taser deployment Kowalczuk resisted Giese's instructions to get on the ground and stay on the ground. It was only after Giese used the Taser a second time that Kowalczuk finally complied and sat and remained on the ground. Giese's actions fall within the scope of those circumstances where the Seventh Circuit has held that law enforcement officers are entitled to qualified immunity for their use of a Taser. Accordingly, Kowalczuk's claim against Giese for excessive force should be dismissed with prejudice.

### III. THE *MONELL* CLAIM LACKS ANY SPECIFC COUNTERVAILING EVIDENCE AND SHOULD BE DISMISSED.

Kowalczuk argues that to the extent Giese's use of force was consistent with the Village of Mt. Pleasant Police Department's policies and training, such policies and training should be held to be unconstitutional. However, Kowalczuk identifies no specific policy or specific aspect of Village of Mt. Pleasant police training that he alleges is unconstitutional. To proceed with a claim pursuant to *Monell,* a claimant must identify an "express policy or custom" of the municipality. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 690-91, 694, 98 S. Ct. 2018 (1978); *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). As a result, Plaintiff's vague non-specific claim against the Village of Mt. Pleasant should be dismissed with prejudice.

### IV. THE PUNITIVE DAMAGES CLAIM LACKS ANY EVIDENCE OF WILLFUL OR WANTON CONDUCT AND SHOULD BE DISMISSED.

Kowalczuk contends that Giese's action against Kowalczuk were willful and wanton and Giese should be subject to paying punitive damages. However, Kowalczuk identifies no evidence that Giese had any contact with Kowalczuk prior to this incident. He identifies no evidence that

7

Giese was acting out of any particular animus against Kowalczuk. The Seventh Circuit has required a "showing of aggravating circumstances or malicious intent" to justify the award of punitive damages. *Endicott v. Huddleston,* 644 F.2d 1208 (7th Cir.1980).

Kowalczuk argues Giese's general escalation of force justifies providing a jury with the opportunity to award punitive damages. However, no particular evidence is identified that Giese acted in a willful or wanton manner. *See Kness v. City of Kenosha*, 669 F. Supp. 1484, 1494 (E.D. Wis. 1987) (punitive damages claim dismissed where plaintiff identified no specific evidence of intentional wrongdoing or malicious intent). To the contrary, the videotaped evidence unequivocally shows Giese repeatedly tried without success to get an inebriated driver to obey his commands to stay on the ground while the inebriated driver's family nearly intervened in the fray and shouted threats at the officer. (Yust Decl., Ex. A.) There is no evidence justifying the possibility of punitive damages and Plaintiff's claim for such damages should be dismissed.

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' moving memorandum, Defendants request the Court dismiss Plaintiff's Amended Complaint on its merits and with costs.

Dated this 15th day of July, 2020.

                                        AXLEY BRYNELSON, LLP

                                        *Electronically signed by Kevin D. Trost*
                                        Lori M. Lubinsky (State Bar No. 1027575)
                                        Kevin D. Trost, State Bar No. 1028231
                                        Attorneys for Defendants
                                        2 East Mifflin Street, Suite 200
                                        Madison, WI 53703
                                        Phone: (608) 257-5661
                                        Fax: (608) 257-5444
                                        Email: ktrost@axley.com