UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MICHAEL A. KOWALCZUK,

    Plaintiff,

    v.                                          Case No. 2:19-cv-1230

SERGEANT ERIC GIESE and
VILLAGE OF MOUNT PLEASANT,

    Defendants.

### DEFENDANTS' RESPONSE TO PLAINTIFF'S
### ADDITIONAL PROPOSED FINDINGS OF FACT

NOW COME Defendants, by and through their attorneys, Axley Brynelson, LLP, by Lori M. Lubinsky and Kevin Trost, and for their response to Plaintiff's Additional Proposed Findings of Fact, state as follows:

1. Michael Kowalczuk lived with his parents, Jeff and Nancy Kowalczuk, and his siblings Nick and Rebecca, on Sunset Boulevard in Racine, Wisconsin. (Jeff Kowalczuk Dep. 8:19-24.)

    **RESPONSE: Admit.**

2. The speed limit on 16th Street when Giese began to follow Kowalczuk was 35 mph but drops to 25 mph.

    **RESPONSE: Admit.**

3. Kowalczuk was driving 40 mph but failed to reduce his speed when the speed limit dropped to 25 mph, so Giese activated his lights to initiate a traffic stop. (Giese Dep. 39:8-9.)

**RESPONSE: Admit.**

4. Kowalczuk did not pull over immediately because he did not feel safe. (Kowalczuk Dep. At 23:11-21.)

   **RESPONSE: Admit Kowalczuk *testified* to this reason for not immediately pulling over.**

5. He knew that he was close to home and wanted to stop at a well-lit road. (Kowalczuk Dep. at 23:11-21.)

   **RESPONSE: Admit.**

6. Kowalczuk testified that he was going to pull over in front of his house and listen to what "the officer had to say." (Kowalczuk Dep. at 23:24-24:1.)

   **RESPONSE: Admit.**

7. Giese, however, did not verify to which address the car was registered (Giese Dep. 36:17-25.)

   **RESPONSE: Deny. Giese verified the vehicle was registered to a house on Sunset Blvd. (Giese Dep., 37: 1-17 [Dkt 40, Ex. B].)**

8. Giese testified that it had "crossed" his mind that Kowalczuk could be under the influence at the time he pulled Kowalczuk over. (Giese Dep. at 71:12.)

   **RESPONSE: Deny. Giese testified he believed Kowalczuk was impaired and had resisted an officer by the time Kowalczuk pulled over and stopped. Kowalczuk resisted by not pulling over in response to Giese activating his lights or his siren. (Giese Dep., 71: 3-8 [Dkt 40, Ex. B].)**

9. Kowalczuk slowly opened his car door. (Giese Dep. at 66:6-17.)

   **RESPONSE: Deny. The cited testimony describes a "normal" opening of the car**

2

**door.**

10. Kowalczuk did not intend to run away when he parked the car; he was scared and does not have a rational reason for why he slowly opened the door after parking. (Kowalczuk Decl. at 3.)

    **RESPONSE: Admit Kowalczuk *attested* to these intentions and emotional state.**

11. As Officer Giese approached with his gun drawn, he yelled conflicting instructions to Kowalczuk: "Stop Stay in the car. Get out of the car right now;" Officer Giese admits that these instructions were conflicting and that his intent was for Michael Kowalczuk to stay in the car. (Giese Dep. at 67:15-68:13.)

    **RESPONSE: Admit.**

12. Giese then instructed Kowalczuk to show his hands. (Giese Dep. at 68:14-22.)

    **RESPONSE: Admit.**

13. Kowalczuk complied with each of Giese's intended instructions, and Giese testified that Kowalczuk was not actively resisting. (Giese Dep. at 68:14-22.)

    **RESPONSE: Admit Kowalczuk complied with Giese's instruction to show his hands and this action was not resisting.**

14. Giese nevertheless grabbed Michael, forcing him from the car and onto the pavement. (Giese Dep. at 69:4-10.)

    **RESPONSE: Deny. Deposition citation does not state these facts. Giese's testimony at this citation states Giese had Kowalczuk exit the vehicle.**

15. As Giese was pulling Kowalczuk to the ground, Kowalczuk asked: "What did I do, man?" (Kowalczuk Dep. 44:2-11, Ex. 5, page 6.)

    **RESPONSE: Admit.**

16. Based on how Giese had aggressively approached and pulled him from the car, Kowalczuk was frightened and anxious. (Kowalczuk Decl. at 5.)

    **RESPONSE: Admit Kowalczuk *attested* to this emotional state in his declaration.**

17. After initially resisting, Kowalczuk complied with Giese's command to get on his stomach and put his hands behind his back. (Kowalczuk Dep., 44:2-11, Ex. 5, Page 7.)

    **RESPONSE: Admit Kowalczuk initially resisted Giese's command but then complied.**

18. Giese was able to place handcuffs on Kowalczuk, which remained secured for the remainder of the incident. (Giese Dep. 70:22-71:14.)

    **RESPONSE: Admit.**

19. Jeff and Nancy Kowalczuk left the house when they heard the commotion of Giese yelling at Michael outside. (Nancy Kowalczuk. Decl. at 6.)

    **RESPONSE: Admit.**

20. Jeff and Nancy Kowalczuk were asleep in their pajamas. (Nancy Kowalczuk Decl. at 7.)

    **RESPONSE: Admit.**

21. Jeff Kowalczuk testified that he heard someone yell: "Stay in the car, get out of the car." (Jeff Kowalczuk Dep. 10:3-8.)

    **RESPONSE: Admit.**

22. It is a quiet neighborhood, so it was very easy to hear the commotion. (Jeff Kowalczuk Dep. 10:3-8.)

    **RESPONSE: Admit.**

23. Jeff and Nancy went downstairs and out the front door, and Nick and Rebecca followed. (Jeff Kowalczuk Dep. 10:10-14.)

**RESPONSE: Admit.**

24. Rebecca stayed on the front porch while Nancy and Jeff walked toward Giese and Kowalczuk; the attached photographs shows the front of house as it would have appeared on the date of the subject incident (Bewley Decl. at 4; Jeff Kowalczuk Decl. at 4, Ex. 1.)

    **RESPONSE: Admit with the exception that the photograph does not accurately depict how the house appeared at the time of the incident. The photograph is taken in daytime; the incident occurred near midnight.**

25. Jeff testified: "We were very fearful for our son, and we were asking him to, you know, to handle our kid with a little more kindness. Not in those words, but we were basically, you know, asking him to, you know, have a little compassion." (Jeff Kowalczuk Dep. 10:16-20.)

    **RESPONSE: Admit.**

26. As they were walking on the lawn, Nancy asked: "is everything ok?" (Nancy Kowalczuk Decl. at 8.)

    **RESPONSE: Deny to the extent Nancy's statement is not heard on the audio of the dashcam video. See Dockery v. Blackburn, 911 F.3d 458, 461 (7th Cir. 2018) (to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events."); *Rivera v. Lindmeier*, 560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

27. At this point, Officer Giese disengaged from Kowalczuk, and instructed Jeff and Nancy—who were still a good distance away on the front law—to "stay back!" (Giese Dep. 78:1-7; Nancy Kowalczuk Decl. at 9.)

5

**RESPONSE: Admit with the exception of the statement "who were still a good distance away on the front lawn". The cited Giese testimony does not support such a fact.**

28. Jeff and Nancy immediately complied, and were shocked at Giese's agitation. (Nancy Kowalczuk Decl. at 9.)

    **RESPONSE: Deny. Jeff and Nancy "kept on advancing towards me." (Giese Dep., 78: 8-11 [Dkt 40, Ex. B].)**

29. As Giese instructed Nancy and Jeff to stay back, Jeff observed Giese grab Michael. (Jeff Kowalczuk Decl. at 7.)

    **RESPONSE: Admit. Giese assisted Michael, who was getting up, back to the ground.**

30. Jeff tried to defuse Giese's anxiousness, saying: "hey, hey, hey…" (Jeff Kowalczuk Decl. at 7.)

    **RESPONSE: Admit Jeff stated "Hey" at least one time. Deny to the extent any further exclamations of "hey" are not heard on the audio of the dashcam video.** *See Dockery v. Blackburn*, **911 F.3d 458, 461 (7th Cir. 2018) (to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events.");** *Rivera v. Lindmeier*, **560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

31. Giese then began to reach for his gun, prompting Jeff to become scared and ask: "are you going to shoot us?" Jeff Kowalczuk Decl. at 8.)

6

**RESPONSE: Deny. Video shows Giese put his hand on his gun; did not take gun out. Deny to the extent Nancy's statement is not heard on the audio of the dashcam video. See Dockery v. Blackburn, 911 F.3d 458, 461 (7th Cir. 2018)(to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events."); Rivera v. Lindmeier, 560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

32. Kowalczuk heard Giese yelling: "stay back, stay back!" and thought it might be his parents coming out of the house. (Kowalczuk Decl. at 4.)

    **RESPONSE: Admit.**

33. He leaned up to look for his mom and said help me. (Kowalczuk Decl. at 4.)

    **RESPONSE: Deny to the extent Kowalczuk's statement is not heard on the audio of the dashcam video. *See Dockery v. Blackburn*, 911 F.3d 458, 461 (7th Cir. 2018) (to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events."); *Rivera v. Lindmeier*, 560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

34. After Giese told Nancy and Jeff to stay back, Kowalczuk responded to Giese: "get off of me," at which point Giese said: "stay the fuck down!" and tackled Kowalczuk back to the ground. (Kowalczuk Decl. at 6.)

    **RESPONSE: Deny to the extent *Kowalczuk's* statement is not heard on the audio of the dashcam video. *See Dockery v. Blackburn*, 911 F.3d 458, 461 (7th Cir. 2018) (to the extent a plaintiff's recounting is "blatantly contradicted by the video such that**

7

**no jury could believe it, we do not credit his version of events.");** *Rivera v. Lindmeier*, **560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

35. Nancy was horrified as she saw Giese yell and tackle Michael to the ground. (Nancy Kowalczuk Decl. at 10.)

    **RESPONSE: Admit Nancy attested to having such an emotion.**

36. Regrettably, Kowalczuk then kicked Officer Giese.

    **RESPONSE: Admit.**

37. Jeff and Nancy Kowalczuk walked to the other side of Kowalczuk's car to observe what was happening. (Jeff Kowalczuk Decl. at 9; Nancy Kowalczuk Decl. at 11.)

    **RESPONSE: Admit. Jeff and Nancy continued to advance towards Giese and Kowalczuk. (Giese Dep., 78: 8-11 [Dkt 40, Ex. B].)**

38. Jeff and Nancy saw Giese punch Michael in the face, and Jeff came around the car and pleaded: "Hey! Don't hurt him!" (Jeff Kowalczuk Decl. at 9-10; Nancy Kowalczuk Decl. at 11; Jeff Kowalczuk Dep. at 11:19-24.)

    **RESPONSE: Admit as to Jeff coming around the car after Giese struck Kowalczuk in the face. Deny to the extent Jeff's statement is not heard on the audio of the dashcam video.** *See Dockery v. Blackburn*, **911 F.3d 458, 461 (7th Cir. 2018)(to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events.");** *Rivera v. Lindmeier*, **560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

8

39. Nancy continued to plead with Giese not to hurt Kowalczuk; she told Giese that Kowalczuk had a mental illness and difficulty following instructions and asked if Giese had children of his own. (Nany Kowalczuk Decl. at 12.)

    **RESPONSE: Deny to the extent Nancy's statement is not heard on the audio of the dashcam video.** *See Dockery v. Blackburn*, **911 F.3d 458, 461 (7th Cir. 2018)(to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events.");** *Rivera v. Lindmeier*, **560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

40. Kowalczuk had not been diagnosed with a mental illness; however, his family has long observed that Michael gets easily overwhelmed, that he does not do well in tense situations, that he cannot maintain eye contact, and has difficulty following instructions. (Nancy Kowalczuk Decl. at 13; Bewley Decl., at 10.)

    **RESPONSE: Admit.**

41. Rebecca, who stayed on the front porch recalls her parents pleading with Giese to stop. (Bewley Decl., at 6.)

    **RESPONSE: Admit Bewley attested to hearing such statements.**

42. From her vantage, she could see that Giese was much larger than Kowalczuk. (Bewley Decl., at 11.)

    **RESPONSE: Admit.**

43. Rebecca did not hear her family make any threatening statements to Giese while Giese was forcefully arresting Kowalczuk. (Bewley Decl. at 9.)

    **RESPONSE: Admit Bewley attested to hearing no such statements. However, Jeff**

9

**Kowalczuk and Giese attested to Jeff threatening Giese to a fight and that Jeff would kick Giese's ass. (Giese Dep., 85: 2-16; 86-87: 20-25, 1 [Dkt 40, Ex. B].))(Jeff Kowalczuk Dep., 14: 1-6 [Dkt 40, Ex. A].)**

44. After Giese punched Kowalczuk, he stood up and began to draw his gun. (Jeff Kowalczuk Dep. at 13:4-6.)

    **RESPONSE: Deny. Giese drew his Taser. (Giese Dep., 83:3-6 [Dkt 40, Ex. B].)**

45. Jeff and Nancy immediately stopped and stepped back. (Jeff Kowalczuk Dep. at 13:4-6.)

    **RESPONSE: Admit.**

46. After Giese punched Kowalczuk, Kowalczuk separated from Giese and stood up. He was still handcuffed and terrified. (Kowalczuk Decl. at 8.)

    **RESPONSE: Admit. Kowalczuk separated from Giese by kicking Giese in the abdomen and genitals and stood up in the direction of Giese. (Giese Dep., 28: 1-25 [Dkt 40, Ex. B]) (Kowalczuk Dep., 30: 1-25 [Dkt 40, Ex. A].)**

47. Kowalczuk turned around to face his parents, with the intent of giving up. (Kowalczuk Decl. at 8.)

    **RESPONSE: Admit Kowalczuk turned and walked away from Giese towards his parents. Deny to the extent Kowalczuk's actions belie an intent of giving up.**

48. He was trying to tell then that he did not understand what was happening. (Kowalczuk Decl. at 8)

    **RESPONSE: Deny to the extent any Kowalczuk statement is not heard on the audio of the dashcam video. *See Dockery v. Blackburn*, 911 F.3d 458, 461 (7th Cir. 2018) (to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events."); *Rivera v. Lindmeier*,**

10

**560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

49. Kowalczuk did not intend to flee or make any movements to leave the area. (Kowalczuk Decl. at 9.)

    **RESPONSE: Deny. Kowalczuk was walking away from the scene. (Giese Dep., 84: 14-17 [Dkt 40, Ex. B].)**

50. He was not resisting. (Kowalczuk Decl. at 10.)

    **RESPONSE: Deny. Kowalczuk was resisting repeated commands by Giese to remain on the ground. (Jeff Kowalczuk Dep., 14: 16-18 [Dkt 40, Ex. A]) (Kowalczuk Dep., 31: 1-25 [Dkt 40, Ex. B].)**

51. Jeff and Nancy continued to plead with Giese to stop. (Jeff Kowalczuk Decl. at 11.)

    **RESPONSE: Deny to the extent Jeff and Nancy's statements are not heard on the audio of the dashcam video. *See Dockery v. Blackburn*, 911 F.3d 458, 461 (7th Cir. 2018)(to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events."); *Rivera v. Lindmeier*, 560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

52. Jeff put his hand up to his face and was telling Giese that Michael was not going to run away. (Jeff Kowalczuk Decl. at 11.)

    **RESPONSE: Deny to the extent Jeff's statement is not heard on the audio of the dashcam video. *See Dockery v. Blackburn*, 911 F.3d 458, 461 (7th Cir. 2018) (to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events."); *Rivera v. Lindmeier*,**

11

**560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

53. As Kowalczuk was turned around, handcuffed, saying to his mom and dad, "I don't know…" Giese shot him with a taser. (Kowalczuk Decl. at 8, 11.)

    **RESPONSE: Admit Kowalczuk was handcuffed and turned away from Giese when the Taser was deployed. Deny to the extent Kowalczuk's statement is not heard on the audio of the dashcam video.** *See Dockery v. Blackburn*, **911 F.3d 458, 461 (7th Cir. 2018) (to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events.");** *Rivera v. Lindmeier*, **560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

54. Kowalczuk fell and struck his head on the pavement, losing consciousness. (Kowalczuk Decl. at 12.)

    **RESPONSE: Admit Kowalczuk fell and Kowalczuk attested to losing consciousness.**

55. Jeff screamed: "No!" and Nancy yelled to her other son: "Oh my God, he just shot him!" (Jeff Kowalczuk Decl. at 12; Nancy Kowalczuk Decl. at 14.)

    **RESPONSE: Deny to the extent Jeff and Nancy's statements are not heard on the audio of the dashcam video.** *See Dockery v. Blackburn*, **911 F.3d 458, 461 (7th Cir. 2018) (to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events.");** *Rivera v. Lindmeier*, **560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

56. Nancy and Jeff continued to plead with Giese to show mercy on Kowalczuk after he tasered him. (Jeff Kowalczuk Decl. at 13.)

    **RESPONSE: Deny. Jeff Kowalczuk threatened Giese between the two uses of the Taser. (Giese Dep., 87: 2-9 [Dkt 40, Ex. B].)**

57. When Michael regained consciousness, he slowly began to stand up. (Nancy Kowalczuk Decl. at 17.)

    **RESPONSE: Admit Kowalczuk stood up after the first Taser deployment. Admit Nancy Kowalczuk attested to her son regaining consciousness.**

58. Kowalczuk was disoriented and confused. (Nancy Kowalczuk Decl. at 17; Kowalczuk Decl. at 13.)

    **RESPONSE: Admit Nancy and Jeff attested to their observations of their son's state.**

59. Kowalczuk did not intend to disobey Giese's instructions to stay down. (Kowalczuk Decl. at 14.)

    **RESPONSE: Deny. Kowalczuk was resisting repeated commands by Giese to remain on the ground. (Jeff Kowalczuk Dep., 14: 16-18 [Dkt 40, Ex. A]) (Kowalczuk Dep., 31: 1-25 [Dkt 40, Ex. B].)**

60. Nancy, seeing Michael's head hit the pavement again, was afraid that Giese had killed her son and began to yell: "Michael! Michael!" (Nancy Kowalczuk Decl. at 19.)

    **RESPONSE: Deny to the extent Nancy's statement is not heard on the audio of the dashcam video. *See Dockery v. Blackburn*, 911 F.3d 458, 461 (7th Cir. 2018) (to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events."); *Rivera v. Lindmeier*,**

13

**560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

61. Nancy could hear Rebecca, still on the porch, crying. (Nancy Kowalczuk Decl. at 20.)

    **RESPONSE: Admit.**

62. The Kowalczuk's began to yell at Giese that he did not "have to hurt Michael." (Jeff Kowalczuk Decl. at 15.)

    **RESPONSE: Deny to the extent Jeff and Nancy's statements are not heard on the audio of the dashcam video.** *See Dockery v. Blackburn*, **911 F.3d 458, 461 (7th Cir. 2018)(to the extent a plaintiff's recounting is "blatantly contradicted by the video such that no jury could believe it, we do not credit his version of events.");** *Rivera v. Lindmeier*, **560 Fed. Appx. 619, 621 (7th Cir. 2014) (court relying on video rather than contradictory statements by inmate.)**

63. At no point during these incidents did any of Kowalczuk's family threaten to harm or intervene in Giese's arrest. (Nancy Kowalczuk Decl. at 21-22; Jeff Kowalczuk at 14.; Rebecca Bewley at 9.)

    **RESPONSE: Deny. Giese and Jeff Kowalczuk testified to Jeff shouting threats at Giese. (Giese Dep., 85: 2-8 [Dkt 40, Ex. B]) (Jeff Kowalczuk Dep., 14: 1-6 [Dkt 40, Ex. A].) Giese further testified that Jeff acted in a threatening manner with clenched fists when walking around the car towards Giese and was afraid he was going to be assaulted by Jeff. (Giese Dep., 81-82: 25, 1-10; 82-83: 23-25, 1-6 [Dkt 40, Ex. B].)**

64. Nany Kowalczuk will testify that throughout the entire incident, her "husband and children were trying to deescalate the situation by pleading with Giese to show mercy on Michael." (Nancy Kowalczuk Decl. at 22.)

14

**RESPONSE: Admit Nancy attested to such a statement. However, Giese and Jeff Kowalczuk testified to Jeff shouting threats at Giese. (Giese Dep., 85: 2-8 [Dkt 40, Ex. B]) (Jeff Kowalczuk Dep., 14: 1-6 [Dkt 40, Ex. A].)**

65. Giese testified that he did not have any suspicion that Kowalczuk had committed a violent crime before stopping him and that it only crossed his mind that Kowalczuk could be intoxicated. (Giese Dep. At 71:12-18.)

   **RESPONSE: Admit as to Kowalczuk not committing a violent crime before Giese stopped him. Deny as to only intoxication crossing Giese's mind. Giese testified he believed Kowalczuk was impaired and had resisted an officer by the time Kowalczuk pulled over and stopped. Kowalczuk resisted by not pulling over in response to Giese activating his lights or his siren. (Giese Dep., 71: 3-8 [Dkt 40, Ex. B].)**

66. At his deposition, Giese testified:

   Based on the situation of his assaultive behavior, his continuous active resistance, the father that came out and was going to punch me, being outnumbered, I could have utilized my baton, I could have struck him multiple more times with my knees, legs or fists. If I had a canine at the time, I could have deployed my canine to bite any of the individuals as well. And did I say baton?

   **RESPONSE: Admit.**

67. Following the incident, Giese told responding officers that Jeff and Nancy had come out of the house "creating a huge ruckus" and that Michael immediately started fighting him, which contradicts the plaintiff's recollection. (Nancy Kowalczuk Decl. at 22-23.)

   **RESPONSE: Admit Giese told officers Jeff and Nancy created a huge ruckus and that Michael started fighting Giese.**

15

Dated this 15th day of July, 2020.

                        AXLEY BRYNELSON, LLP

                        *Electronically signed by Kevin D. Trost*
                        Kevin D. Trost, State Bar No. 1028231
                        Lori M. Lubinsky (State Bar No. 1027575)
                        Attorneys for Defendants
                        2 East Mifflin Street, Suite 200
                        Madison, WI 53703
                        Phone: (608) 257-5661
                        Fax: (608) 257-5444
                        Email: ktrost@axley.com